# STATE OF MICHIGAN

# COURT OF APPEALS

In re FROST/McCALLISTER, Minors.

UNPUBLISHED
December 11, 2014

No. 320699
Wayne Circuit Court
Family Division
LC No. 04-432130-NA

In re FROST/McCALLISTER, Minors.

No. 320700
Wayne Circuit Court
Family Division
LC No. 04-432130-NA

Before: DONOFRIO, P.J., and FORT HOOD and SHAPIRO, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondents T. Frost ("respondent-mother") and R. McCallister ("respondent-father") appeal as of right an order terminating their parental rights to their minor children, TLF and MDM, pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). Respondent-mother's parental rights were also terminated pursuant to subsection (3)(l). We affirm.

## I. FACTUAL BACKGROUND

Respondent-mother has a Children's Protective Services (CPS) history dating back to 2003. In June 2004, her oldest son, TOF, was removed from her care and made a temporary court ward due to physical abuse by respondent-mother and unsuitable housing. Respondent-mother was given a treatment plan. By September 2006, respondent-mother was in sufficient compliance with her treatment plan and the court dismissed its jurisdiction over TOF, as well as TIF, who was born during the proceedings. Respondent-mother gave birth to two more children

---

[1] *In re Frost/McCallister*, unpublished order of the Court of Appeals, entered March 19, 2014 (Docket Nos. 320699 and 320700).

-1-

in 2006 and 2007. In May 2009, her four children[2] were removed from her care due to allegations of substance use, unsuitable housing, and failure to benefit from Families First services. Respondent-mother made admissions, the court assumed jurisdiction over the children, and respondent-mother was given another treatment plan. In June 2011, the four children were returned to her care and the court terminated its jurisdiction.

Respondent-mother gave birth to respondents' minor child TLF in July 2011. In November 2011, the court authorized another petition seeking temporary custody of TLF, as well as his four siblings. This petition was based on a police complaint alleging that the children were left home alone without adult supervision and were residing in deplorable living conditions. In February 2012, respondent-mother made admissions and the court assumed jurisdiction over the children and ordered her to comply with another treatment plan. Respondent-father had not established paternity of TLF and therefore was not offered a treatment plan.

In September 2012, the Department of Human Services (DHS) filed a petition requesting termination of respondent-mother's parental rights to all five children. This petition also requested termination of respondent-father's parental rights to TLF. While that petition was pending, respondents' minor child MDM was born, and DHS filed a petition seeking jurisdiction over MDM, as well as termination of both respondents' parental rights to her. The court held a hearing on both petitions from January 2013 through April 2013. Ultimately, the court terminated respondent-mother's parental rights to her four oldest children.[3] With respect to the minor children at issue here, the court ruled there was insufficient evidence to support termination of respondent-father's parental rights because he was not given the opportunity to engage in services and there were insufficient allegations involving him. Although the court found statutory grounds were established to terminate respondent-mother's parental rights to TLF and MDM, it found that termination was not in their best interests, given that the court was not terminating respondent-father's parental rights. The court retained jurisdiction of TLF, took jurisdiction of MDM, and ordered both parents to comply with a treatment plan which necessitated both respondents to obtain housing and income, exercise visitation, maintain regular contact with their CPS caseworker, attend individual therapy, and complete monthly drug screens.

As of October 2013, respondents were not in compliance with their treatment plan. The court ordered that DHS file a petition for termination of parental rights. The court also ordered that services continue. On November 8, 2013, DHS filed a supplemental petition seeking termination of respondents' parental rights. Following a termination hearing, conducted in December 2013 and January 2014, the court terminated respondents' parental rights. This appeal followed.

---

[2] Respondent-father is not the father of these four children.

[3] This Court denied respondent-mother's delayed application for leave to appeal that decision. *In re Frost/McMickel Minors*, unpublished order of the Court of Appeals, entered November 26, 2013 (Docket No. 317121).

## II. STANDARD OF REVIEW

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met by clear and convincing evidence. *In re JK,* 468 Mich 202, 210; 661 NW2d 216 (2003); *In re Fried,* 266 Mich App 535, 540-541; 702 NW2d 192 (2005). Once the petitioner has established a statutory ground for termination by clear and convincing evidence, the trial court shall order termination of parental rights if the court also finds that termination of parental rights is in the best interests of the child. MCL 712A.19b(5). Whether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's decision is reviewed for clear error. *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). A decision is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

## III. ANALYSIS

Respondent-father argues that the trial court erred in finding statutory grounds to terminate his parental rights.[4] We disagree. The trial court did not clearly err in finding at least one statutory ground for termination was established by clear and convincing evidence.

The trial court terminated respondent-father's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). These subsections permit termination of parental rights under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parents have received recommendations to rectify those conditions, the conditions have not been rectified by the parents after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *

---

[4] Respondent-mother does not challenge the finding of statutory grounds to terminate her parental rights.

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

In regard to MCL 712A.19b(3)(c), respondent-father first asserts that termination was premature under both subsections because 182 days had not elapsed since he began receiving *services* in July 2013. However, MCL 712A.19b(3)(c) provides that 182 or more days must "have elapsed since *the issuance of an initial dispositional order.*" (Emphasis added.) The initial dispositional order was entered May 15, 2013, and the termination hearing was held in December and January 2014.[5] Here, the time frame provided by subsection (3)(c) was satisfied because 182 or more days had elapsed between the issuance of the initial dispositional orders regarding the children and the time of the termination hearing. See *In re Sours*, 459 Mich 624, 636; 593 NW2d 520 (1999). Moreover, the conditions that led to adjudication, including unsuitable housing, continued to exist and there was no reasonable likelihood that those conditions would be resolved within a reasonable time. Thus, respondent-father's challenge pursuant to MCL 712A.19b(3)(c) fails.

While only one ground for termination needs to be proven, we further hold that the trial court did not clearly err in terminating respondent-father's parental rights pursuant to MCL 712A.19b(3)(g) and (j). In regard to MCL 712A.19b(3)(g), respondent-father failed to comply with his treatment plan. "[A] parent's failure to comply with the parent-agency agreement is evidence of a parent's failure to provide proper care and custody for the child." *In re JK*, 468 Mich at 214; see also *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Moreover, we do not agree with respondent-father that there was a reasonable likelihood he would be able to provide proper care and custody within a reasonable time. While respondent-father had partially complied with his treatment plan, he also failed to comply with several important requirements. Respondent-father was ordered to complete monthly drug screens but had only completed two screens, and one screen was positive for marijuana; he was inconsistent with his visitation and the CPS case worker opined that he was not bonded to the children; and he was unable to provide suitable housing, which had been an ongoing problem in the case. Specifically, in regard to housing, respondent-father claimed at the termination hearing that he was working on helping respondent-mother find an apartment from a list he had been provided. However, respondent-father had said virtually the same thing months earlier at a July 2, 2013 dispositional hearing, showing the lack of progress that had been made. Respondent-father further claimed that he owned a home in Ohio that was suitable for the children. However, it could not be verified that

---

[5] We note that while the supplemental petition for termination was filed in September 2014, services continued throughout the proceedings until termination.

respondent-father owned that home. In regard to respondent-father's Michigan home, the CPS caseworker testified that the house remained unsuitable. Moreover, while respondent-father attended parenting classes, his caseworker opined that he did not benefit from the classes based on his irregular visitation and behavior during visitation. It is not enough to participate in the services offered; a respondent must demonstrate that he or she benefitted from the services provided. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012); *In re White*, 303 Mich App at 710. Therefore, while respondent-father contends that he would have been able to provide proper care and custody for his children within a reasonable time, the record does not support his claim. In regard to MCL 712A.19b(3)(j), there was evidence that respondent-father physically abused his minor children's siblings. His conduct in this regard suggests that he would treat his children similarly. *In re Foster*, 285 Mich App 630, 631; 776 NW2d 415 (2009). Given the circumstances, the trial court did not clearly err in terminating respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j).

Respondent-father contends, generally, that the court should have afforded him more time to work on his treatment plan. However, the evidence showed that respondent-father failed to respond to CPS's repeated efforts to engage him in the case sooner. Respondent-father failed to establish paternity for months because he lacked identification. If respondent-father had established paternity earlier, he would have had more time to work on a treatment plan. Moreover, even after he established paternity and received a treatment plan, he was noncompliant; specifically, he failed to complete monthly drug screens, made no advances in his parental visitation, and lacked suitable housing. Respondent-father's CPS caseworker opined that he had been given a reasonable amount of time to make progress on his treatment plan, and, based on the record, we agree and accordingly reject respondent-father's claim.

Next, both respondents argue that the trial court erred in finding that termination was in their children's best interests. In deciding a child's best interests, a court may consider the child's bond to his parent, the parents' parenting ability, the child's need for permanency, stability, and finality, the suitability of alternative homes, the parent's visitation with the child, and compliance with a treatment plan. *In re White*, 303 Mich App at 713-714; *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713.

The trial court did not clearly err in finding that termination of both respondents' parental rights was in the children's best interests. While the court noted that respondent-mother loved her children, the court also recognized respondent-mother's lengthy history with CPS and the repeated wardships of her children. Regarding respondent-father, the court noted his sporadic visitation with his children while this matter was pending. Additionally, each respondent failed to comply with, or benefit from, their respective treatment plans. Respondent-mother had only minimally complied with her latest treatment plan; at the time of termination, she continued to use drugs, failed to progress in therapy, and continued to demonstrate poor parenting skills. While respondent-father completed parenting classes, his CPS worker opined that he did not benefit from the classes, and he also failed to comply with drug screens or progress in therapy. Significantly, the court pointed out that both respondents lacked suitable housing, which was a long-standing issue and a critical component of respondents' treatment plans. Respondent-mother was homeless and living with her sister in a residence that she admitted was not suitable for the children. Respondent-father's Detroit home was under construction, not furnished, and

was unsafe.  Additionally, his ownership of an Ohio home, which he claimed was suitable for his children, could not be verified.  Finally, the court found that both children were at an age where permanent planning was essential for their continued growth and development.  The children were doing well in their placements with caregivers who were considering adoption.  TLF was a child with special needs and required one-to-one attention that respondents would not likely provide.  Both children needed the stability that would be lacking with respondents.  For these reasons, a preponderance of the evidence established that termination of both respondents' parental rights was in the children's best interests, and, therefore, we hold that the trial court did not clearly err in terminating respondents' parental rights.

Affirmed.

/s/ Pat M. Donofrio
/s/ Karen M. Fort Hood
/s/ Douglas B. Shapiro